UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ROLAND HUFF,                )
                            )
        Plaintiff,           )
                            )
v.                          )   Case No. 21-CV-0284-CVE
                            )
METROPOLITAN LIFE INSURANCE )
COMPANY,                    )
                            )
        Defendant.           )

## OPINION AND ORDER

Before the Court is defendant Metropolitan Life Insurance Company's (MetLife) motion to dismiss (Dkt. # 6). Defendant moves, pursuant to Fed. R. Civ. P. 12(b)(6), for dismissal on the ground that plaintiff failed to state a claim upon which relief may be granted. Defendant argues that plaintiff's state law claims of breach of contract and bad faith are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. (ERISA), and that under ERISA, plaintiff does not state a claim against defendant; thus, defendant asks the Court to dismiss plaintiff's lawsuit. Dkt. # 6. Plaintiff responds that he "believes Defendant MetLife is mistaken about his MetLife insurance policy . . . being sponsored and administered by his former employer, BP, and that the policy is subject to ERISA." Dkt. # 12, at 1.[1]

---

[1] As a preliminary matter, this Court reminds plaintiff's counsel that he is in federal court and a complaint should contain a short, plain statement of the claim(s) showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). It is not a forum for hyperbole or pejorative comments about defendant.

I.

Plaintiff Roland Huff was employed by BP Corporation of North America Inc. (BP) until his retirement in 1999, and participates in the BP Retiree Group Universal Life (GUL) Program. Dkt. # 3, at 3; Dkt. # 12, at 1; Dkt. # 3-3. BP's GUL Insurance Program is "insured and administered by MetLife[.]" Dkt. # 6-1, at 3. BP's GUL summary plan description (SDP) characterizes the GUL insurance program as a "welfare benefit" plan, and lists BP as plan sponsor, plan administrator, and agent for service of legal process. Id. at 28. MetLife is listed as "[c]laims administrator" only. Id. The SDP states that BP, as plan administrator, determines "whether an individual is eligible for or entitled to benefits"; "interpret[s] plan provisions"; and "establish[es] rules and procedures for plan administration." Id. at 29. Further, the SDP outlines continued coverage for retired employees, and notes that "[retirees'] premiums will not be the same as those paid by active BP employees[,]" and that they "cannot convert [their] GUL coverage to individual coverage." Id. at 26-27. Finally, the SDP lists plan participants' rights under ERISA, including the right to "[e]xamine . . . all documents governing the plan." Id. at 34.

Plaintiff's GUL insurance certificate lists BP under "employer," and states the group policy number is 32900-G and the group number is 95520. Dkt. # 12-3, at 6-7. The certificate further states plaintiff's full name and address; certificate effective date of October 1, 1998; certificate number including the group number, 95520; and coverage amount of $264,000. Id. at 7. Plaintiff further includes a 2017 to 2018 annual GUL statement, and a 2019 quarterly GUL statement, both of which list BP as employer, plaintiff's name and address, certificate number beginning with the group number 95520, coverage amount of $264,000; and certificate start date of October 1, 1998. Id. at 9-10.

2

Plaintiff alleges that until 2012, his monthly premium payments for his life insurance coverage were approximately $200 per month. Id. However, in 2013, plaintiff received a letter, on MetLife's letterhead, regarding "BP Retiree Group Universal Life (GUL) Program." Dkt. # 3-3. The letter stated in pertinent part, "[a]s announced by BP in your Annual Enrollment materials, rates for the BP Retiree Group Universal Life (GUL) Program will increase over a two year period effective January 1, 2014." Id. Plaintiff alleges that since 2012, his life insurance premiums have increased from $200 per month in 2012, to $1,943.04 per month by 2021. Dkt. # 3, at 4. Plaintiff alleges that he has contacted MetLife numerous times "requesting specific documentation," but has not been provided with said documentation or with an explanation as to why his premiums have been significantly increased. Id. at 4,8.

Plaintiff filed this suit on July 14, 2021, naming MetLife only as defendant, alleging state law claims of breach of contract (count 1) and bad faith (count 2). Dkt. # 3, at 23-24. Plaintiff further requested in his complaint that the Court "order" MetLife to produce certain documents previously requested by plaintiff. Id. at 22-23.

## II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any

3

set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). Further, "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference," if "the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Id. (internal quotations omitted).

### III.

Defendant argues that BP's GUL plan, through which plaintiff has a life insurance policy, is an "employee benefit plan" within the meaning of ERISA. Dkt. # 6, at 5. Thus, defendant argues, plaintiff's state law claims, which "relate to" his BP employee benefit plan, are expressly preempted

by ERISA. Id. at 8-10. Defendant further argues that plaintiff failed to state an ERISA claim, and that, in any case, plaintiff should be directing his information requests and claims for relief to BP, the plan sponsor and administrator, not MetLife.

ERISA provides a civil claim for enforcement of a beneficiary's rights under an employee benefits plan governed by ERISA. 29 U.S.C. § 1132(a). ERISA preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title."[2] 29 U.S.C. § 1144. The Supreme Court has noted that ERISA's preemption provision is "conspicuous for its breadth" and has interpreted the term "relate to" broadly:

> "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Under this "broad common-sense meaning," a state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive scheme.

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990). The Supreme Court has clearly held that ERISA preempts common law claims, as well as claims arising under state statutory schemes governing employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987). The Tenth Circuit has noted that ERISA "preempt[s] nearly all state claims relating to causes of action against covered health insurers, even when 'the elements of the state cause of action [do] not precisely duplicate the elements of an ERISA claim." Lind v. Aetna Health, Inc., 466 F.3d 1195, 1198 (10th Cir. 2006) (quoting Aetna Health, Inc. v. Davila, 542 U.S. 200, 216 (2004)). Even if ERISA provides fewer remedies than state law, this has no bearing on the preemption analysis

---

[2] ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce[.]" 29 U.S.C. § 1003(a)(1).

5

because § 1144 "evidences Congress's policy choices and intent to provide only the remedies it specified." David P. Coldesina, D.D.S. v. Estate of Simper, 407 F.3d 1126, 1139 (10th Cir. 2005).

The scope of ERISA preemption is sufficiently broad that it completely preempts any state law claims falling within its civil enforcement provision. Metropolitan Life Ins. v. Taylor, 481 U.S. 58 (1987). And, "the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" Pilot, 481 U.S. at 47-48. For example, in Pilot, the Supreme Court rejected plaintiff's argument that state law breach of contract and bad faith claims were "protected from [ERISA's] pre-emptive effect." Id. at 48-57.

Here, plaintiff states in his complaint that his life is insured under a life insurance policy, BP is listed as the "Employer," and the group policy number is 95520, which also appears on plaintiff's 2017 to 2018, and 2019 GUL statements. Dkt. # 3, at 3; Dkt. # 12-3, at 9-10.[3] Further, defendant attached as an exhibit to its motion to dismiss the BP GUL policy summary, which states that BP's GUL plan is a "welfare benefit" plan for "eligible employees," and contains a page detailing employee's rights under ERISA. Dkt. # 6-1, at 7, 28, 34. Based on plaintiff's pleaded facts, submitted documents, and defendant's exhibit containing the GUL policy summary, the Court finds that plaintiff's life insurance plan is an employee benefit plan within the meaning of ERISA.

---

[3] Because plaintiff references in his complaint the GUL policy, the group number, that BP was listed as employer, and the policy is central to plaintiff's claim, the Court will consider certain documents in addition to the factual allegations in the complaint—specifically those provided in Dkt. # 12-3 and Dkt. # 6-1—in evaluating the 12(b)(6) motion to dismiss. See Smith, 561 F.3d at 1098. The Court notes that while plaintiff questions in his response, based on an August 27, 2021 conversation with a BP benefits customer service representative, whether plaintiff's policy is sponsored and administered by BP, Dkt. # 12, at 3-4, the Court will consider only the facts alleged in plaintiff's complaint and the documents specifically incorporated by reference therein. Moreover, plaintiff does not challenge whether the GUL policy summary document is authentic, and plaintiff himself provides the insurance certificate and other documents listing BP as the employer on his insurance policy.

Further, ERISA preempts plaintiff's state law claims if the claims "relate to" plaintiff's employee benefits plan. Plaintiff asserts state law breach of contract and bad faith claims based on significant increases to his life insurance premiums. Plaintiff's employee benefit plan is the direct subject of his state law claims; thus, plaintiff's state law claims relate to his employee benefit plan. Here, as in Pilot, plaintiff's breach of contract and bad faith claims are not protected from ERISA's preemptive effect. Therefore, the Court finds that plaintiff's claims are preempted by ERISA.

Defendant argues that plaintiff failed to state a claim under ERISA. Dkt. # 6, at 1. This Court agrees. Under ERISA's civil enforcement provision, a civil action may be brought by a plan participant either 1) claiming the relief specifically outlined in 29 U.S.C. § 1132(c),[4] or 2) "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(A)-(B). Plaintiff does not allege in his complaint that he ever requested any information from BP with respect to his premium increases. Further, nothing in the complaint suggests he is seeking to clarify or enforce his rights as to BP, the plan administrator. Thus, Plaintiff's complaint does not plead sufficient facts to fall under either subsection of ERISA's specific civil action provisions, and, plaintiff failed to name BP—both plaintiff and defendant's documents state BP is the plan

---

[4] "(1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c).

7

administrator— as a defendant in his complaint, which makes his complaint alone inadequate to state a plausible claim under ERISA.

Finally, plaintiff requests as a "claim for relief" that the Court "order" defendant to produce certain documents that plaintiff requested in prior communications with defendant. However, the Court finds plaintiff's request is not a "claim for relief;" rather, plaintiff's request is essentially a discovery request. Under ERISA, there is an administrative procedure for discovery, and the general rule, with some exceptions, is that the Court's review "is confined to the administrative record." Murphy v. Deloitee & Touch Grp. Ins. Plan, 619 F.3d 1151, 1160 (2010). Because plaintiff's claims are preempted by ERISA, plaintiff's discovery request is limited by the administrative procedure outlined in ERISA's statutory scheme, and is not appropriate for this Court to grant as a form of injunctive relief.

In sum, the Court finds that plaintiff's complaint should be dismissed. The Court will allow plaintiff to file an amended complaint if he wishes to allege a claim under ERISA, and name the correct defendant as to plaintiff's employee benefit plan.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss (Dkt. # 6) is **granted**, and plaintiff's state law claims of breach of contract and bad faith are **dismissed**.

**IT IS FURTHER ORDERED** that, no later than **November 5, 2021**, plaintiff may, if he wishes, file an amended complaint asserting an ERISA claim.[5]

**DATED** this 25th day of October, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff should also ensure he names the correct party in the amended complaint.